## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CARYN JAFFE,
8363 Tamar Drive, Columbia Maryland, 21045

      Plaintiff,

v.

CAREFIRST BLUE CROSS BLUE SHIELD,
Union Center Plaza, 840 First Street, NE, Washington
D.C. 20065; SHAUNA VISTAD, 1501 S. Clinton Street,
Baltimore, MD 21224 ; PATRICIA POVLITZ 6412 Heathcliff
Lane, Tracy's Landing, Maryland 20779; LINDA DUDASH,
2918 Bachman Rd, Manchester, MD 21102, SHARRON
CANELLA, 8536 Westerman Circle, Nottingham MD,
AND ALIA LACHMANSINGH, 113 Eastmoor Drive
Silver Spring, MD and DOES 1-50.

      Defendants.

Case: 1:19−cv−03474     JURY DEMAND
Assigned To : Moss, Randolph D.
Assign. Date : 11/18/2019
Description: Employ. Disrcim. (H−DECK)

    **JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiff Caryn Jaffe, on her own *pro se*, comes now with her complaint against her former

employer, the CAREFIRST BLUE CROSS BLUE SHIELD ("CAREFIRST"), CAREFIRST

employees SHAUNA VISTAD, PATRICIA POVLITZ, LINDA DUDASH, SHARRON

CANELLA AND ALIA LACHMANSINGH, (collectively, "CAREFIRST EMPLOYEES") and

DOES 1-50 respectfully alleges and states as follows:

### INTRODUCTION

This is an action by Ms. Jaffe, an employee, against her former employer for damages she has

sustained and continues to suffer from, as a result of her former employer's and the CAREFIRST

EMPLOYEES' violations of : 1) Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. §

2000e, *et seq.*, (2) violations of the American's With Disabilities Act ("ADA") §1630.2, (3)

RECEIVED

NOV 1 8 2019

Clerk, U.S. District and

provisions of the ADA which prohibit acts of retaliation when disability discrimination is involved, (4) wrongful termination; (5) The Health Insurance Portability and Accountability Act of 1996 ("HIPPA"); 6) intentional and negligent infliction of emotional distress, (7) the D.C. Human Rights Act of 1977 (DCHRA),(7) The Age Discrimination in Employment Act of 1967 (ADEA), and for (7) fraud, and (8) defamation.

Ms. Jaffe was an exemplary and accomplished CAREFIRST employee, who was harassed, and bullied by her peers and superiors including but not limited to the CAREFIRST EMPLOYEES. Ms. Jaffe wrongfully terminated and punished for doing her job, discriminated against and punished for being an employee with special medical needs, humiliated and harassed without just cause by Defendant.

Ms. Jaffe is an experienced EMS, nursing, and educator with over twenty- six years of hands-on patient care in multiple healthcare settings including but not limited to hospitals, ambulatory surgery centers, in the home, and long term care facilities. She has developed subject matter expertise including but not limited to Pediatrics – IV Therapy, critical care transport, 911 EMS, emergency room, urgent care centers, PICU (Pediatric Intensive care unit/ Pediatric Intermediate care unit) hematology/oncology, rehabilitation, and Adult medicine  - critical care transport, emergency room, urgent care center, endoscopy, infusion medicine, vascular access, PACU, interventional pain management, auto-immune and tick-borne illness. Ms. Jaffe has many years of experience with healthcare providers and attorneys through her prior employment and accordingly, Ms. Jaffe has been able to cultivate and maintain relationships with key personnel at such companies.

It was this experience and network, including Ms. Jaffe's close contacts with key healthcare decision makers within the clinical medicine and insurance arena throughout the United States that prepared her for her role within Defendant's Special Investigations Unit ("SIU"). This experience

made Plaintiff an attractive candidate to CareFirst Blue Cross Blue Shield when she applied for the FEP Senior Nurse Audit Specialist position within SIU in the DC Office in 2014. Per the job description of FEP Senior Nurse Audit Specialist provided during the interview process, and verbal explanation by then SIU Director, Douglas Mailhot, her role within the Division Corporate Audit Assurance Services (CAAS) department was to handle clinical review of domestic and overseas claims and cases, both prepay and postpay, investigate and document potential / suspected incidences of fraud, waste, and abuse (FWA) with an overall goal to identify and investigate the existence healthcare fraud, waste, and abuse (FWA) by primarily reviewing overseas claims and cases.

Ms. Jaffe was told that her role initially would involve documenting any and all reasons that invoiced services are not covered by the FEP benefits, submitting summarized information with coverage recommendations for the CareFirst BCBS medical director, and updating the opinions within the proper platforms. Additionally she was informed that her role would involve review of translated medical records (when applicable), identification of improprieties in coding and billing, identification of FWA schemes and their evolution, determination of medical necessity or lack thereof using nursing and EMS base knowledge, FEP medical policies, available health insurance benefits, FEP administrative manual, FEP brochure information, and research on relevant topics including but not limited to international healthcare operations of specific countries where healthcare services were provided, facility capabilities, provider credentials, medical and psychological diagnoses, documentation of services, and billing practices of providers, healthcare facilities, air and ground transport companies, durable medical equipment providers, and third party billers.

As the FEP Senior Nurse Audit Specialist at CAREFIRST, Ms. Jaffe understood that she could lead positive change within the CAREFIRST organization. Ms. Jaffe undertook efforts to

further CAREFIRSTS responsibility to adhere to various laws and protocols.

Despite her efforts, and excellent work product, in the years that Ms. Jaffe had been employed by CAREFIRST, she has been subject to the persistent verbal abuse, illegal, retaliatory, discriminatory, harassing and unfair treatment by the CAREFIRST EMPLOYEES, and others in the CAREFIRST workplace.

As a responsible employee, she has followed all appropriate channels to report instances of abuse and harassment to CAREFIRST and its Human Resources department, and she conveyed the feelings of severe anxiety and discomfort, as well as the severe physical toll that this exposure caused for health.

Plaintiff encouraged her CAREFIRST leadership to take some steps to ameliorate this hostile and damaging work environment for disabled persons, as well as women over 40, who like her, are of Jewish decent. But CAREFIRST leadership, including its Office of General Counsel, feigned an inability to take any steps, even sensitivity training of Ms. Jaffe's supervisor.

Ms. Jaffe's discovered numerous issues with respect to CAREFIRST's operations and personnel that Plaintiff believed were violative of various laws, and/or failed to meet professional and ethical standards that required further investigation by CAREFIRST leadership.

Plaintiff was the subject of bullying by 2 SIU staff members Sharron Canella and Alia Lachmansingh. Cannella and Lachmansingh had on multiple occasions bullied, taunted, harassed and attempted to humiliate and embarrass Plaintiff. These two bullies had multiple unprofessional conversations with Plaintiff throughout their employment and prior to their resignation which caused great emotional distress to Plaintiff. Plaintiff, filed a complaint against Sharron Canella and Alia Lachmansing.

Canella and Lachmansigh's behavior caused great disfunction and tension in SIU that continued to rise in the unit. For example. Plaintiff was involved in an early morning conversation

with Sharron Cannella which started when they were the only 2 associate in the office. Many associates showed up during the conversation when Cannella shared out loud, threatening, defamatory, unprofessional, and unsubstantiated comments to Plaintiff. Some of these comments were attacks on Plaintiff and were based on comments about Plaintiff and her struggles with her severe autoimmune disease. Plaintiff complained about Cannella's conduct to Human Resources using the company grievance process. Plaintiff is aware that others in SIU had made similar complaints about Cannella.

Shortly after Ms. Jaffe began reporting some of these issues with Cannella to Human Resources, CAREFIRST's HRCC (Human Resources Client Consultant) Patricia Povlitz, began retaliating against Ms. Jaffe by isolating and ostracizing her for her actions to raise awareness on this issue. Polvitz abused the fact that Plaintiff was granted an ADA accommodation in past which allowed Plaintiff to telecommute to work as a means to wrongfully isolate Plaintiff and prevent her from coming to the office and forced her to work from home.

Moreover, CAREFIRST leadership has blocked several detail requests for Ms. Jaffe to join other CAREFIRST offices in retaliation for filing an informal complaint of discrimination.

Instead of support from Povlitz, or Human Resources, or any attempt to reconcile the issues reported, Povlitz in conjunction with Interim Director of SIU LINDA DUDASH, called for Plaintiff to attend a number of mandatory meetings which Plaintiff were in fact, a pretext for retaliation against Plaintiff for seeking ADA accommodations and requests to ameliorate the bullying and discrimination Plaintiff reported and was suffering.

During these meetings, and on a number of occasions, Plaintiff's ADA Accommodation was discussed verbally and in email including communications that caused Plaintiff to complain that she was being asked to put her health behind meeting schedules. On one specific instance, HRCC

Povlitz told Ms. Jaffer that she should put off any medical tests after her scheduled doctor's appointment because these meetings are not option and Plaintiff was required to be in attendance. Plaintiff has saved these messages as they were devastatingly upsetting to Ms. Jaffe.

Plaintiff who repeatedly made ADA requests that were ignored, and requests for special accommodations that fell on deaf ears, was wrongfully terminated for reporting the bullying actions of her colleagues who were victimizing her and for pointing out certain issues with CAREFIRST's operations that CAREFIRST did not want to address and did not want exposed.

Throughout her employment with CareFirst Blue Cross Blue Shield, Plaintiff, whose employment was terminated in October 26, 2018 with an official termination date of November 9, 2018, fully performed all of the terms of her employment including but not limited responsibilities included in her job description and additional duties formally and informally assigned by Special Investigations Unit leadership and/or outside entities related to the CAREFIRST.

Contrary to CAREFIRST'S defamatory statements in their termination letter sent to Plaintiff, Ms. Jaffe performed her job well. By way of example, Ms. Jaffe was responsible for SIU savings well over $1 million dollars per year following her orientation. To evaluate her personal effectiveness, Plaintiff recorded the healthcare dollars saved because of the work she performed. She was aware directly responsible for, knowing her clinical and professional experience in EMS, paramedicine, nursing, critical care transport, special event medicine, sporting event emergency care, medical education, and Nursing education, EMS education, healthcare program development and implementation, medical supply needs and ordering, legal nurse consulting was the reason for her success within SIU. Exactly one week before her employment with CareFirst BCBS was terminated for cause, then SIU Vice President, Antoinette Rothey, and DC Office Director of

Human Resources, Ellery Joyeau, in a face-to-face meeting held in Canton, Maryland, then described Plaintiff as "A Ferrari being asked to do the job of a trusty Buick / Chevy."

With nowhere else to turn, Ms. Jaffe brings this action against CAREFIRST for hostile work environment on the basis of her disability, her ethnicity as Jewish woman, and for retaliation for making a legally protected complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* as well as her claims under the ADA.

Not only have her concerns and efforts been brushed aside by her colleagues, superiors, and CAREFIRST itself but CAREFIRST leadership has retaliated against her after her complaints—despite years of exemplary performance and consistently positive reviews—by effectively demoting her, stripping her of her title and the job responsibilities upon which she relied when accepting the position, and derailing her established career path and wrongfully terminating her. CAREFIRST's . SHAUNA VISTAD'S , LINDA DUDASH AND THE CAREFIRST EMPLOYEE'S discriminatory actions must cease and CAREFIRST must make Ms. Jaffe whole and be  punished for its bad acts.

Defendants' conduct toward Plaintiff constitutes prohibited discrimination and retaliation under the federal Civil Rights Act OF 1964, 42 U.S.C. §2000e *et seq.*, As a result of Defendants' intentional and deliberate discriminatory and harassing threats, retaliatory conduct, breach of ADA Law, and retaliation, Plaintiff has suffered and will continue to suffer economic losses, consequential damages, reputational injury and harm to her career, and emotional distress. Further, Defendants' deliberately wrongful conduct warrants an award to Plaintiff of punitive damages, in addition to attorneys' fees and costs.

## PARTIES

1.      Plaintiff Caryn Jaffe ("Plaintiff") has at all times relevant to this complaint resided

in the DC metropolitan area. Ms. Jaffe is, and was at all times relevant to this complaint, employed by CAREFIRST whose principal place of business in the District of Columbia.

2.     Defendant CAREFIRST BLUE CROSS BLUE SHIELD ("CAREFIRST"), maintains its principal offices located in the District of Columbia.

## JURISDICTION AND VENUE

3.     The unlawful employment practices alleged in this complaint occurred in the District of Columbia.

4.     This Court has jurisdiction and venue over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1391(e), and 42 U.S.C. §§2000e-5(f) and 2000e-16(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     Ms. Jaffe timely filed a Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in the Washington, D.C. field office, EEOC charge number **570-2019-01289**, on or about August 6, 2019, alleging unlawful discrimination and retaliation against Defendant among other claims. The EEOC provided Plaintiff with a "Right to Sue" letter, dated August 15, 2019, which Plaintiff received on August 20, 2019. Fewer than ninety (90) days have elapsed since Plaintiff's receipt of the Right to Sue letter.  Plaintiff first filed a complaint with the EEOC more than 180 days ago on or about January 10, 2019, alleging unlawful discrimination and retaliation against Defendant.

## FACTUAL BACKGROUND

### Ms. Jaffe's CAREFIRST Experience

6.     Plaintiff incorporates all facts stated above.

7.     Plaintiff has a severe disability. Respondent is aware of this disability.

8.     Plaintiff requested a reasonable ADA Disability accommodation in 2014, 2017, and 2018.

9. In 2014, this was done directly through CareFirst HR.

10. In 2017 & 2018, it was done via outside vendor, The Reed Group (Formerly Aon Hewitt).

11. Each request submitted included a letter from Plaintiff's primary care provider.

12. Multiple accommodation requests by Plaintiff were wrongfully denied by Defendant as "a safety problem" for the Defendant, undue business hardship, & for appearance of allegedly forbidden actions.

13. The denials in 2014 were discriminatory, dangerous, and inappropriate and harmed Plaintiff.

14. In April 2017 HR submitted a request for FMLA relief behalf despite working over 40 hours/week.

15. Defendant wrongfully and deliberately released Plaintiff's private health and medical information to a vendor and in violation of HIPAA.

16. Emails & performance memos from Shauna Vistad, SIU Manager, who started on 4/2018 included intentionally false and misleading statements, inappropriate & discriminatory discipline tasks wrongfully assigned to Plaintiff through her Supervisor, Robin Walker.

17. In contrast to Plaintiff, Ms. Walker was not disciplined for mistakes she should have prevented even after assuming responsibility for them. Robin is an African American. Plaintiff is thin, Caucasian, and the only Jewish DC SIU employee, in direct contrast to all other associates, most of which were African American & obese.

18. Plaintiff was treated differently and disparately because of her race, religion and physical appearance.

19. Shauna Vistad, a CAREFIRST employee, and member of the management team, repeatedly made

comments about Plaintiff's Jewish heritage during conversations with Plaintiff on at least 2 occasions making Plaintiff very uncomfortable and distressed.

20.     Vistad and others commented on more than one occasion on Plaintiff's race, body appearance, age, religion, disability and health.

21.     Plaintiff has retained records which show discrimination illustrated in verbal & email communication.

22.     SHAUNA VISTAD frequently sabotaged employees work and work product.

23.     The more issues that Plaintiff spoke with Human Resources about, or SHAUNA VISTAD, the more isolation, censorship, work sabotage, bullying, discrimination, & harassment SHAUNA VISTAD inflicted upon Plaintiff.  VISTAD's bullying  most often involved negative comments and verbal harassment regarding VISTAD'S comments that Plaintiff's work was negatively affected by Plaintiff's disability.

24.     Robin Walker, SIU Prepay Supervisor, repeatedly & appropriately assisted Plaintiff. She often took responsibility for mistakes she didn't catch but should have. She often told Plaintiff, "We just need to make sure we don't give them any ammunition against you."

25.     On 7/6/18, following a meeting when Plaintiff's remote work & flex schedule ADA accommodation was threatened by SHAUNA VISTAD, LINDA DUDASH and other members of the SIU upper management team, she stressed this to Plaintiff.

26.     Plaintiff was in fact being retaliated against for needing disability accommodations & advocating for herself against bullying and her accommodation needs.

27.     Retaliation by VISTAD, DUDASH and CAREFIRST EMPLOYEES including management and supervisors (not Robin Walker) was a continued, consistent & escalating pattern of behavior that caused Plaintiff severe emotional and physical distress and harm.

28.     Statements & emails from Shauna Vistad, SIU Manager, illustrate that she believed she knew what was / was not in Ms. Jaffe's active ADA Accommodation agreement, tried to create essential job functions not meeting ADA criteria of such, and routinely turned these functions it into a punishment, falsely telling Plaintiff, "It was required part of your job; You shouldn't' have to rely on someone else to complete it."

29.     Vistad in an effort to harass, punish, discriminate and retaliate against Plaintiff dissolved all administrative help Plaintiff needed and had & intentionally isolated, harassed and wrongfully disparaged and defamed Plaintiff in the SIU.

30.     Assistance requested was never provided by Vistad & she refused to see that 2 remaining SIU RNs had to assume high-level, excessive job responsibilities for the 3 RNs who resigned w/out replacement plus a RN, CLNC Manager dating as far back as 12/2015.

31.     Vistad bullied, harassed and wrongfully and under false pretenses and pretext for retailing against Plaintiff, reprimanded her.

32.     Vistad's deliberate, wrongful infliction of restrictions prevented Plaintiff from compensating for her cognitive, intermittent, disability issues despite discussion of the impact of her actions.

33.     When Plaintiff raised these problem, Vistad escalated by threating Plaintiff with  of insubordination for talking about any of the mandatory, weekly, performance meetings.

34.     Plaintiff was wrongfully held to different standards and wrongful discipline compared to SIU members including management.

35.     Inaccuracies in disciplinary practices were not corrected. On 9/5/18, an email from SHAUNA VISTAD revealed she never had a copy of my previous ADA Accommodations despite constantly referring to specifically what was / wasn't included in the agreement & using that

information to punish me for not being able to complete my assigned work or work assumed from vacant FTE Nurses that remained open.

36.     The EVP of the Legal Department, Meryl Burgin, facilitated a DC SIU staff meeting to discuss concerns related to management by Shauna Vistad, during which the entire SIU staff expressed disgust with how Shauna treated me after issuing me a Final Warning memo related to disability issues, which provoked a panic attack.

37.     Vistad refused to give me space to let me calm down, coming closer & sitting instead of leaving the room.

38.     Vistad gave me a formal reprimand for causing office disruption & advised any discussion re: performance improvement meetings would be viewed as insubordination & be handled accordingly.

39.     After encouragement from the Legal Division EVP, Meryl Burgin, & all associate email from Brian Piennick, the new CEO, re: grievance processes, open door policy, & the standards CareFirst must uphold to ensure everyone feels safe & supported in the work environment, I requested a meeting with Ms. Burgin to address concerns about treatment by SIU Upper Management, Shauna Vistad and VP, Antoinette Rothey.

40.     Ms. Burgin turfed my request to Ms. Rothey and Ellery Joyeau in HR. The standards our CEO mentioned was not upheld with my interactions with management including Vistad.

41.     The process of adding & re-requesting ADA disability accommodations was completed on 10/8/18 w/ email confirmation that all information collected by The Reed Group was relayed to CareFirst.

42.     No contact re: ADA submission occurred until I received an ADA Accommodation response letter on 10/24/18. The ADA Response letter breached CareFirst ADA Accommodation

Request policy & the ADA law of 1990. The response was made without an interactive process & without addressing all requests.

43.     The response illustrated SIU management misunderstanding of the requests & included wrongful denials of undue business hardship assigned to requests that have proven to save CareFirst time & money. 2 requests were responded to with 1 rationale w/out naming the request being denied.

44.     On 10/24/18, I met with Robin Walker & Ellery Joyeau discussing a severance agreement possibility. Ellery said, I would hate to have you leave here after 4 years, with nothing.

45.     On 10/26/18, I was escorted from the building by Ellery Joyeau, Robin Walker, & Shana Vistad. after I was given a severance agreement to review.

46.     I turned down severance to maintain my rights. On 12/23/18, I received a certified letter with a termination date: 11/9/18 with a false statement and reason: that I didn't meet job duties.

47.     On 1/8/19 & 1/14/19 - I emailed Ellery Joyeau because I didn't receive COBRA info. He assisted.

48.     This delay in COBRA severely and adversely affected my health causing me to miss treatments directly related to my disability.

49.     I believe I was subjected to race. age, religion. & appearance discrimination. I believe I have been harassed, discriminated, & retaliated against in violation of the Americans with Disabilities Act of 1990. as amended. is received on 07-18-2019

50.     I was employed with the above named Respondent since September 29, 2014, until I was terminated on December 21, 2018.

51.     My job title was FEP Senior Nurse Audit Specialist.

52.    I am an individual with a disability. Respondent is aware of my disability.

53.    I requested a reasonable ADA Disability accommodation in 2014, 2017, and 2018.

54.    In 2014, this was done directly through CareFirst HR. In 2017 & 2018, it was done via outside vendor, The Reed Group (Formerly Aon Hewitt).

55.    Each request submitted included a letter from my primary care provider.

56.    Multiple requests were denied as a safety problem for the company, undue business hardship, & for appearance of forbidden actions.

57.    The denials in 2014 were discriminatory, dangerous, and inappropriate and me in harms way. In April 2017 HR submitted a request for FMLA on my behalf despite consistently work over 40 hours/week. The deliberate release of my info. to a vendor is a HIPAA violation.

58.    HR advised the submission was made b/c my disability needs changed, unbeknownst to me.

59.    I was told I didnt have an active ADA Accommodation since 2015. Emails & verbal confirmation from my previous Manager, Roderick Moore, RN, CLNC, and communication from HRCC Patricia Polizzi, show the 2014 ADA Accommodation Agreement was often used for CareFirsts benefit between 12/2015 & 4/2017.

60.    Emails & performance memos from Shauna Vistad, SIU Manager who came on board on 4/2018 included inappropriate & discriminatory discipline tasks assigned to me by Supervisor, Robin Walker.

CAREFIRST's Hostile Work Environment

61.    The above facts resulted in a hostile work environment for Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Hostile Work Environment, in Violation of Title VII the Civil Rights Act Of 1964, As Amended)**

62.     Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

63.     Ms. Jaffe suffered a hostile work environment when, within the workplace and despite numerous requests and complaints, she was subjected to frequent use of ethnic, race and gender based slurs. In addition, Ms. Jaffe was subject to repeated exposure to stereotypical images based on race and/or national origin.

64.     The use of these slurs and imagery both ridiculed and insulted the racial group in which Ms. Jaffe is a member and was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.

65.     Ms. Jaffe did not tacitly or explicitly welcome this harassing conduct.

66.     The slurs and imagery singled out Jewish Caucasian women and therefore constitute conduct because of Ms. Jaffe's race and/or national origin.

67.     Responsible CAREFIRST officials had actual notice of the harassing conduct because of Ms. Jaffe's repeated complaints about it.

68.     Responsible CAREFIRST officials expressly indicated that they would do nothing to mitigate the harassment and create a safe and lawful working environment for Ms. Jaffe including taking such simple steps as sensitivity training. Responsible CAREFIRST officials acted to create a safe working environment for other protected classes.

69.     CAREFIRST's lack of response to Ms. Jaffe's complaints of discrimination was motivated because of Ms. Jaffe's race and/or national origin.

70.     CAREFIRST's harassing conduct and its lack of response thereto constitutes a discriminatory hostile work environment in violation of 42 U.S.C. § 2000e.

71. CAREFIRST created and condoned a hostile and/or abusive work environment. CAREFIRST created and condoned a hostile and abusive work environment that permeated with discriminatory intimidation, ridicule and insult, that was sufficiently severe or pervasive to alter the conditions of the Ms. Jaffe's employment and create an abusive working environment

72. Because of this hostile work environment Ms. Jaffe has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, humiliation, embarrassment, and mental and emotional distress.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Title VII of the Civil Rights Act Of 1964, As Amended)

73. Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

74. In violation of Title VII, CAREFIRST discriminated against Ms. Jaffe because she made a charge of employment discrimination. Ms. Jaffe engaged in protected activities including, but not limited to, attempting to raise awareness of the impacts that stereotypical images and racial slurs have on her as a Jewish woman, filing formal complaints within CAREFIRST.

75. As a result of Ms. Jaffe's protected activities, CAREFIRST, LINDA DUDASH took adverse actions against Ms. Jaffe, including, but not limited to, the following:

a. Reassignment to significantly different responsibilities than those she had previously been assigned to perform;

b. Exclusion from meetings and assignments which fell within the responsibilities outlined in the position description for her role;

c. Postponement of attendance at regular work activities and meetings; and

d. Denials of multiple detail opportunities.

76. CAREFIRST and LINDA DUDASH along with the CAREFIRST EMPLOYEES

has unlawfully retaliated against Ms. Jaffe in violation of Title VII by taking a materially adverse employment action against her in response to protected activity.

77.    As a result of CAREFIRST's discriminatory and retaliatory actions, Ms. Jaffe has suffered humiliation, embarrassment, psychological and emotional harm, severe emotional and psychological distress and damage to her career.

### THIRD CAUSE OF ACTION

**(Discrimination in Violation of The Americans with Disabilities Act 42 U.S.C. § 12112(a) and The Rehabilitation Act 29 U.S.C. § 794(a).)**

78.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

79.    The ADA and the Rehabilitation Act provides disabled individuals with essentially identical protections against employment discrimination. *See Harrison v. Rubin.* 174 F.3d 249, 253 (D.C.Cir.1999) ("Claims and defenses under the two statutes are virtually identical."). The ADA prohibits certain employers from discriminating against "a qualified individual with a disability" with "regard to ... [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a program receiving federal financial assistance "solely by reason of her or his disability." 29 U.S.C. § 794(a). Claims of employment discrimination under these statutes generally can be scrutinized together given the coextensive scope of their coverage. *Harrison,* 174 F.3d at 253.

80.    Ms. Jaffe: (1) is disabled within the meaning of the statute, (2) was "qualified" for the position for which she was hired with or without a reasonable accommodation, and (3) suffered an adverse employment action because of his disability.

81.    CAREFIRST and the CAREFIRST EMPLOYEES systematically and intentionally

denied Ms. Jaffe because of her disability was not paid what someone with the same skills and position would be paid.

82. After her wrongful termination, Ms. Jaffe saw CAREFIRST posted her job and listed it at a much higher rate of pay than what she was offered.

83. Ms. Jaffe upon being hired and after, was promised pay increases that were never granted. Ms. Jaffe was denied advancement at CAREFIRST and pay she was entitled to as a result of CAREFIRST EMPLOYEES' false and defamatory statements about her, including false reports generated by LINDA DUDASH, and discriminatory practices by LINDA DUDASH.

## FOURTH CAUSE OF ACTION

### (Unlawful Retaliation)

84. Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

85. Ms. Jaffe by reporting the bullying, harassment and discrimination she was the recipient of and subjected to at CAREFIRST engaged in a statutorily protected activity. Rather than assist her or ameliorate the abuse she was suffering, CAREFIRST, her employer, took adverse personnel action and sanctioned and punished Ms. Jaffe in the manners described above which includes acts to isolate her, disparage her, deny her access to the workplace and office, and by wrongfully disparaging and reprimanding her under false pretexts.

86. CAREFIRST's unlawful retaliation against Ms. Jaffe, which ultimately lead to her wrongful termination, caused her severe distress, ruined the trajectory of her career, negatively affected her credit, denied her access to medications and health care she needed and compromised her health severely.

## FIFTH CAUSE OF ACTION

### (Violations of Health Insurance Portability and Accountability Act)

87.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

88.    CAREFIRST and CAREFIRST EMPLOYEES violated Plaintiff's rights under The Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). Cathy Quinn, RN, the Human Resources nurse who handles ADA accommodations for CAREFIRST, unbeknown to Plaintiff, wrongfully submitted Plaintiff's personal information including her address, the fact that she has a disability and her private medical records to the REED GROUP, and outside vendor that collects information for CAREFIRST for those employees who requests for an FMLA and ADA accommodations. QUINN had no reason to disclose such information and Plaintiff had not requested any FMLA requested.   DUDASH directed and ratified this conduct.

## SIXTH CAUSE OF ACTION

### (Intentional and negligent infliction of emotional distress)

89.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

90.    SHAUNA VISTDAD, CAREFIRST and the CAREFIRST EMPLOYEES via their harassment, bullying, discrimination, illegal conduct, and retaliation against Plaintiff caused her to suffer severe emotional distress and physical harm.

91.    Plaintiff as a direct result of the above suffered heightened physical pain, severe anxiety, depression, panic attacks, was denied access to medication and suffered emotionally as a result thereof.

## SEVENTH CAUSE OF ACTION

### (All Defendants, Violations of the D.C. Human Rights Act of 1977 (DCHRA)

92.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully

set forth herein.

93.     CAREFIRST's Federal Employee Program (FEP), is funded by the Federal Office of Personnel Management (OPM). Plaintiff was designated to and worked as one of two FEP designated employees.  Per the DC Human Rights Act, which makes discrimination illegal based on 21 protected traits including disability, gender, age, race and religion for people that live, visit or work in the District of Columbia. The DC Human Rights Act prohibits discrimination in housing, employment, public accommodations and educational institutions.

94.     As stated above, VISTAD and the other CAREFIRST EMPLOYEES discriminated against Plaintiff on the basis of her disability, gender, age, race and religion.

## EIGHTH CAUSE OF ACTION

(The Age Discrimination in Employment Act of 1967 (ADEA)

95.     Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

96.     Charlotte Straight, RN was the only other senior nurse audit specialist in SIU.

97.     Nurse Straight and Plaintiff were tasked with many similar if not identical responsibilities.

98.     Nurse Straight and Plaintiff's shared the same overall goal for a majority of their work.

99.     SHAUNA VISTAD disciplined Jaffe for things such as "giving opinions" or "being verbose" with respect to case information entered whereas Straight, who is 70 years or older, would write similar notes and was never disciplined. Also, Jaffe was forced to use FSTS-a particular web based software programs and for taking notes- and Straight was not. Jaffe was harassed by VISTAD for her style of nursing documentation and Straight was not, despite there being similar styles.

100.    VISTAD caused great distress to Jaffe by singling her out wrongfully and creating false narratives and pretexts regarding her work which in fact was more than satisfactory and similar to Straights.

## NINTH CAUSE OF ACTION

### (ALL DEFENDANTS )

101.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

102.    SHAUNA VISTAD and all CAREFIRST EMPLOYEES made defamatory statements about Plaintiff and her work product, and her character that caused Plaintiff emotional and physical harm and ultimately have impacted her ability to have gainful employment.

## TENTH CAUSE OF ACTION

### (ALL DEFENDANTS, FRAUD )

103.    Ms. Jaffe hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

104.    VISTDAD knowingly created false reports regarding Plaintiff's work performance in an effort to isolate, discriminate against, harass and ultimately terminate Plaintiff from CAREFIRST.

105.    VISTDAD and the CAREFIRST EMPLOYEES over the course of Plaintiff's employment created numerous false reports and made numerous false statements as part of their conspiracy to harm, discriminate against and harass Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Jaffe hereby respectfully demands and prays for the following:

A.    A declaratory judgment that CAREFIRST's discriminatory practices have created

a hostile work environment for Ms. Jaffe;

    B.    A permanent injunction requiring CAREFIRST to take steps to foster an inclusive environment for disabled and Jewish employees to the same extent that they do for other racial and/or national origin groups and preventing CAREFIRST from engaging in all retaliatory activities against Ms. Jaffe;

    a.    An order directing CAREFIRST to take the following actions: Re-employ Ms. Jaffe to her former position or one of greater status, responsibility and pay;

    b.    Arrange for sensitivity training for all Defendant's employees named herein;

    c.    Compensate Ms. Jaffe $5.9 Million dollars payable jointly and severally against all Defendants, for the damages Defendants actions have caused Ms. Jaffe;

    C.    An award of actual, compensatory damages in an amount to be proven at trial;

    D.    An award of attorneys' fees and costs; and

    E.    For such other and further relief and the Court deems just, equitable, and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff requests a jury trial for all questions of fact raised by this Complaint.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,   and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause   unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result   in the dismissal of my case.

Dated: November 15, 2019              Respectfully submitted,

Caryn Jaffe
Pro Se Plaintiff
8363 Tamar Drive Apt 826,
COLUMBIA, MD 21045
Phone: (410) 913-2742
Email: cj2taflute@gmail.com